**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK WRIGHT,** | : |
| **Petitioner** | : |
| | **CIVIL ACTION NO. 3:13-2185** |
| **v.** | : |
| | **(Judge Mannion)** |
| **J.E. KRUEGER, Warden** | : |
| **Respondent** | : |

**MEMORANDUM**

Petitioner, Mark Wright, a federal inmate currently confined in the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania (FCI-Schuylkill), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. He "contends that the Federal Bureau of Prisons ("BOP") abused its discretion in deciding that he is not entitled to credit against his federal sentence for the time he spent in state confinement for the exact offense for which he was federally prosecuted." (Doc. 1, petition at 1). Petitioner "further contends that the Disciplinary Hearing Officer's ("DHO") imposition of a monetary fine, pursuant to 28 C.F.R. §541.4(e), which includes under Program Statement 5270.09. page 15, paragraph E the suspension of commissary privileges for an indefinite period until the fine is paid, is invalid and contravenes due process, and for the reasons argued herein, is cognizable for habeas review under 28 U.S.C. §2241." Id. For relief, Wright requests "(1) remand to the BOP for proper consideration of

Petitioner's <u>Barden</u> request for concurrent sentences, (2) set aside the DHO's $25.00 monetary fine sanction; and (3) issue a preliminary injunction ordering the BOP to reinstate Petitioner's commissary and TRULINCS privileges, and remove the $25.00 encumbrance placed on his Prison Trust Fund Account." (Doc. 1, petition at 16). A response and traverse having been filed, the petition is ripe for disposition. For the reasons set forth below, the Court will deny the petition.

I. **Background**

    **A. Sentence Computation**

On December 6, 1991, Petitioner was arrested in Philadelphia after being found in possession of 521 vials of cocaine. (Doc. 6-2 at 3, Declaration of Patricia Kitka, BOP Correctional Programs Specialist at the Designation and Sentence Computation Center (DSCC)). He was subsequently convicted and, on August 25, 1992, sentenced by the Philadelphia Court of Common Pleas to three to six years imprisonment for possession with intent to deliver controlled substances. <u>Id</u>.

On August 25, 1993, Wright was indicted in the United States District Court for the Eastern District of Pennsylvania of conspiracy to distribute cocaine base and possession with intent to distribute cocaine base. <u>Id</u>.

On September 16, 1993, the United States Marshal Service ("USMS") borrowed Wright from state custody pursuant to a writ of habeas corpus ad prosequendum in order that he may appear in the United States District Court for the Eastern District of Pennsylvania. (Doc. 6-2 at 11, United States Marshals Service (USMS) Individual Custody and Detention Report).

On May 26, 1994, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to life imprisonment on the conspiracy charge and forty (40) years imprisonment on the possession charge. (Doc. 6-2 at 14, Judgment in a Criminal Case). The Court ordered the terms of imprisonment to be served concurrently. Id. The judgment, however, was silent regarding concurrency with the state sentence Petitioner was serving at that time. Id.

On June 21, 1994, Petitioner was returned by the USMS to the primary custody of Pennsylvania authorities to continue serving his state sentence. (Doc. 6-2 at 11, (USMS) Individual Custody and Detention Report). The federal judgment was filed as a detainer. Id.

On December 9, 1997, Petitioner completed his state sentence and was taken into custody by the USMS to begin serving his federal sentence. Id.

On June 11, 1998, Petitioner's sentence was reduced by the federal sentencing court to 360 months on both counts, to be served concurrently. (Doc. 6-2 at 21, Amended Judgment in a Criminal Case). The amended judgment was again silent regarding concurrency with the state sentence Wright was serving at the time the original sentence was imposed. Id.

In accordance with Petitioner's June 12, 1998 sentence reduction, the BOP updated Petitioner's sentence computation by commencing his 360-month federal sentence on December 9, 1997, the date he was released from his state sentence and taken into custody by the USMS to begin serving his federal sentence. (Doc. 6-2 at 26-27, Public Information Inmate Data). He was not entitled to any prior custody credit, and his projected release date is April 1, 2024, via good conduct time release. Id.

On June 12, 2003, Petitioner wrote a letter to his sentencing judge, the Honorable Harvey Bartle, III, informing him that the BOP had incorrectly calculated his federal sentence as commencing on December 9, 1997 as opposed to "the date offense concluded on." (Doc. 6-2 at 29, Letter). He requested the Court to contact the BOP to correct the mistake. Id. By correspondence to Warden Pugh, dated June 19, 2003, the Court requested information from the BOP concerning

the start date of Petitioner's federal sentence. (Doc. 6-2 at 31, Letter to Warden

Pugh).

By Letter dated July 1, 2003, Warden Pugh responded to Judge Bartle's

correspondence with the following:

> This is in response to your correspondence dated June 19, 2003, in which you inquire into the start date (commencement date) of the above referenced offender's federal sentence.
>
> On May 26, 1994, Mr. Wright was sentenced to a term of life imprisonment, for the offense of Conspiracy to Distribute Cocaine Base and Possession with Intent to Distribute Cocaine Base. On June 11, 1998, an Amended Judgment & Commitment Order was issued reducing the term of imprisonment to 360 months on both counts, terms ordered to served concurrently.
>
> At the time of sentencing in federal court, Mr. Wright was produced by state custody pursuant to a Federal Writ of Habeas Corpus Ad Prosequendum. Mr. Wright was serving a 3-6 year state sentence for the offense of Possession with Intent to Deliver Controlled Substances. Principles of Comity required the return of the defendant after sentencing in federal court, to continue service of state sentence imposed.
>
> The language in the Judgment & Commitment Orders does not state the relationship (concurrent/consecutive) to the term of imprisonment in state court. Title 18, United States Code, § 3584(a), states in part, "multiple terms of imprisonment imposed at different times (emphasis added) without the judge specifying whether they are to run concurrently or consecutively, they will run consecutively unless the statute specifies otherwise". Mr. Wright's federal sentence was treated as a consecutive sentence.

Bureau of Prisons staff have verified with Pennsylvania State officials that Mr. Wright satisfied his state term of imprisonment on December 9, 1997. On that day, Mr. Wright was turned over to federal authorities for service of federal sentence imposed.

We have calculated Mr. Wright's sentence as commencing on December 9, 1997, the date of release from his state sentence pursuant to Title 18, United States Code, §3585(a), Commencement (Beginning Date) of sentence, which states, "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentenced is to be served." As stated earlier, Mr. Wright was "borrowed" from state authorities at the time of sentencing in federal court; therefore, absent the language in the Judgment & Commitment Orders indicating concurrent service of sentence to the undischarged state sentence, Mr. Wright's federal sentence has been carried as a consecutive sentence.

It is our desire to carry out the intent of the sentencing court in computing Mr. Wright's federal sentence. If the intent of the sentencing court was to have Mr. Wright serve his federal sentence concurrent to the state term, an Amended Judgement & Commitment Order must be received indicating same. This would permit the federal sentence to start on the date of imposition, May 26, 1994, as opposed to December 9, 1997, the date Mr. Wright was released from his state sentence.

I trust this response has addressed your concerns. If you have any further questions or concerns, please let me know.

(Doc. 6-2 at 32-33, Letter to Honorable Harvey Bartle, III).

On July 21, 2003, Judge Bartle responded with the following:

Thank you for your letter of July 1 concerning Mark Wright.

It was and is my intention that he serve his state and federal sentence consecutively.

(Doc. 6-2 at 34, Letter to Warden Pugh).

By correspondence dated August 10, 2011, Correctional Programs Specialist, Kara Carr, informed Petitioner that he was not eligible for a *nunc pro tunc* designation indicating the following:

This is in response to your request for credit toward your federal sentence for time spent in state custody. Title 18 U.S.C. §3585(b), prohibits the application of this credit. However, as a result of the decision in Barden v. Keohane, the Bureau considers an inmate's request for prior custody credit for time spent in state custody, as a request for a *nunc pro tunc* or retroactive designation. In accordance with Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, a designation affecting concurrent service of state and federal sentences is made only when it is consistent with the goals of the criminal justice system.

We have reviewed your request. In your case, you were sentenced on August 25, 1992, in the State of Pennsylvania to a 3 to 6 year term of confinement. On May 26, 1994, you were sentenced in the United States District Court for the Eastern District of Pennsylvania to a term of life (later reduced to 360 months), (silent).

Both Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and Title 17 U.S.C. §3584(a), state in part; "Imposition of concurrent or consecutive terms. If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." Multiple terms of imprisonment imposed at different times run

consecutively unless the court orders that the terms are to run concurrently. The Bureau interprets the phrase, "an undischarged term of imprisonment", as applying to any lawfully imposed federal or state, local or foreign (non-federal) sentence or revocation of a conditional release term (probation, supervised release, parole, etc.).

In your case, the federal sentence is consecutive to the undischarged term of imprisonment in the state of Pennsylvania and therefore does not meet the criteria for a concurrent "*nunc pro tunc*" designation.

Based on the foregoing, we have determined you are ineligible for a *nunc pro tunc* designation or retroactive designation.

I trust this response has addressed your concerns.

(Doc. 6-2 at 37, Letter to Mark Wright).


### B.  Disciplinary Proceeding

On October 15, 2012, Petitioner was served with Incident Report No. 2363225 charging him with Fighting With Another Person, a Code 201 violation. (Doc. 6-2 at 41, Incident Report).  The incident report, which was written by Officer T. Malarkey, reads as follows:

On (10/14/2012 at 5:14 pm) I observed Inmate Wright # 46950-066 involved in a physical altercation with Inmate Williams, Eric #60653-066. The inmates were wrestling with each other against the wall and striking each other with their fists in the Unit 2A Common Area near the steps next to the unit entrance door.

Id.

On October 16, 2012, Petitioner appeared before the Unit Discipline Committee ("UDC"). Inmate Wright indicated that he "understood his rights" and that he had "no statement". (Doc. 6-2 at 41, Part II - Committee Action). Based on the severity of the prohibited act, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending disciplinary segregation time, loss of phone, commissary and good conduct time. Id. During the UDC hearing, staff member, J. Menne, informed Wright of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 6-2 at 43, Inmate Rights at Discipline Hearing).

On October 16, 2012, Wright was provided with a "Notice of Discipline Hearing before the (DHO)" form.  (Id. at 44). Wright chose not to have a staff member represent him, or to call any witnesses. Id.

On November 26, 2012, Petitioner appeared for a hearing before DHO, K. Bittenbender. (Doc. 6-2 at 46-47, DHO Report). During the DHO hearing, Petitioner was again read his rights, and he indicated that he understood them. Id. Petitioner offered the following statement on his behalf:

The report is true; it was a misunderstanding.

Id.

In addition to the Incident Report and Investigation, the DHO also relied on photographs taken by Lt. Chmely on October 14, 2012. Id. The specific evidence taken from the relied upon documentary evidence was as follows:

> WRIGHT's involvement in the incident, as noted in Section 11 of Incident Report 2363225, as provided by T. Malarkey, was reviewed. Paraphrased, Officer Malarkey writes: On the above date and time I observed inmate WRIGHT #46950-066 involved in a physical altercation with inmate Williams, Eric #60653-066. The inmates were wrestling with each other against the wall and striking each other with their fists in the Unit 2A Common Area near the steps next to the entrance door.

> Inculpatory evidence in the form of photographs taken by Lt. Chmely dated 10/14/12 corroborated the evidence cited in this report. The photographs depict injuries to both inmates which support both inmates being involved in a mutual physical altercation. The photograph of Inmate WILLIAMS notes an abrasion to the bridge of his nose. The photograph of Inmate WRIGHT notes a laceration to the right, backside of his head near his ear.

> The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report as well as the inmate's admission. The physical altercation was eye-witnessed by the reporting officer. The DHO finds the charge for code 201 to warrant the Forfeiture of Non Vested Good Conduct Time in addition to Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

Upon questioning by the DHO, Inmate WRIGHT, Registration #46950-066 admitted the charge. He elaborated upon his plea by stating, the report is true.

After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate WRIGHT, Mark, Register No. 46950-066 committed the prohibited act(s) of Fighting with another person, Code(s) 201 on 10-14-12, at or about 5:14PM in Unit 2A Common Area of FCI Schuylkill, PA.

Id. The DHO sanctioned Petitioner to disallowance of twenty-seven (27) days good conduct time, thirty (30) days disciplinary segregation, six (6) months loss of phone and visiting privileges, and a twenty-five dollar monetary fine. Id. The DHO documented his reasons for the sanctions given as follows:

WRIGHT's involvement in a fight with another inmate potentially threatened not only the safety of the participants, but staff responding to the incident and other inmates in the area. Sometimes what appear to be isolated incidents (a fight in this case) evolve to involve others. Accordingly, Disciplinary Segregation and the Disallowance of Good Conduct Time is sanctioned to punish WRIGHT for his misconduct while the Loss of Privileges (Phone and Visit) and a Monetary Fine is sanctioned in an effort to deter him from this behavior in the future.

Id. Wright was advised of his appeal rights at the conclusion of the hearing. Id.

## II. Discussion

### A. Wright's Sentence Computation

#### i. Jurisdiction

It is not the sentencing court which determines if jail time credits should be granted towards a federal sentence, it is the Bureau of Prisons ("BOP"). See United States v. Wilson, 503 U.S. 329, 333-35 (1992); Edwards v. United States, 41 F.3d 154, 155 (3d Cir.1994). The proper vehicle for challenging the erroneous determination of sentence credit by the BOP is a petition for relief under 28 U.S.C. §2241 in the district where the defendant is imprisoned. United States v. Smith, 101 F.Supp. 2d 332, 338 (W.D. Pa. 2000); United States v. Donohue, No. 93 CR 422, 1999 WL 690154 (E.D. N.Y. Aug. 28,1999). Failure by the BOP to implement the sentence imposed by a sentencing court mandates habeas corpus relief under §2241. See Rios v. Wiley, 201 F.3d 257 (3d Cir. 2000); see also Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976)(holding that where prisoner seeking federal habeas corpus relief challenges effect of events "subsequent" to his sentence, habeas corpus remedy is appropriate rather than motion pursuant to 28 U.S.C. §2255). Because Petitioner is alleging that the BOP has failed to calculate his sentence correctly, he is properly before this court.

### ii.  **Computation of Federal Sentence**

The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, <u>see</u> 18 U.S.C. §3585; United States v. Wilson, 503 U.S. 329, (1992), and has delegated that authority to the Director of the Bureau of Prisons under 28 C.F.R. §0.96 (1992). See United States v. Brann, 990 F.2d 98, 103-04 (3d Cir.1993).

### 1.  **Primary Jurisdiction**

When two different sovereigns have custody of a criminal defendant over time, the general rule is that the sovereign who acquires custody first in time has primary jurisdiction over the defendant. <u>See</u> Chambers v. Holland, 920 F.Supp. 618, 622 (M.D.Pa.), <u>aff'd</u>, 100 F.3d 946 (3d Cir.1996) and cases cited therein. Primary jurisdiction remains vested in the jurisdiction that first arrested defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence. Notably, producing a state prisoner under *writ of habeas corpus ad prosequendum* to answer federal charges does not relinquish state custody. Chambers, 920 F.Supp. at 622 (citations omitted). Thus, in this case, the state of Pennsylvania, acquired primary jurisdiction over Wright when it arrested him and retained primary custody over

him when it produced him pursuant to the *writ of habeas corpus ad prosequendum*.[1]

## 2. Prior Custody Credit

Computation of a federal sentence is governed by 18 U.S.C. §3585, and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> (1) as a result of the offense for which the sentence was imposed; or

---

[1]A prisoner detained pursuant to a *writ of habeas corpus ad prosequendum* is considered to remain in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person. See e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n. 1 (3d Cir.2002). The receiving sovereign in this case is the federal government, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id.

> (2) as a result of any other charge for which the defendant was
> arrested after the commission of the offense for which the
> sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. §3585(a), (b).

There are three ways that an inmate can accrue federal jail credit: (1) credit for time spent in custody while actually serving a federal sentence; (2) credit for prior custody under 18 U.S.C. §3585(b); and (3) credit for time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer, commonly referred to as "Willis" credit. See Willis v. United States, 438 F.2d 923 (5th Cir.1971).

Section 3585(b) allows an inmate to use time served in custody prior to the imposition of a sentence towards the completion of that sentence when the custody was "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." This last clause provides that time spent in custody cannot be credited toward a federal sentence if it was used to satisfy a non-federal sentence. The Supreme Court has made clear that inmates are not allowed to "double count" credit. See United States v. Wilson, 503 U.S. 329, 337 (1992); see e.g., Rios v. Wiley, 201 F.3d 257, 271-72 (3d Cir.2001). Simply put,

under Section 3585(b), the BOP may not grant presentence credit for time that has been credited against another sentence. Id.; Rios, 201 F.3d at 271-72.

In this case, at the time the federal sentence was imposed, Petitioner was in primary state custody, by virtue of the December 6, 1991 arrest by officers of the Philadelphia Police department. Although the criminal conduct associated with the December 6, 1991 arrest formed part of the basis of the federal criminal charges connected with his current federal sentence[2], after Petitioner's August 25, 1993 indictment, he remained in state custody due to the state proceedings.

Federal authorities then "borrowed" Wright pursuant to a *writ of habeas corpus ad prosequendum*, and promptly after federal sentencing, on or about June 21, 2004, the United States Marshals Service returned Petitioner to state authorities in satisfaction of the federal writ.

Under 18 U.S.C. §§3584(a) and 3585(a), the determination as to when an inmate's federal sentence may commence is based upon the intent of the federal sentencing Court. In the instant action, it is clear from Judge Bartle's July 21, 2003, correspondence that it was his intention that Petitioner serve his state and federal sentences consecutively. (See Doc. 6-2 at 34, letter). Accordingly,

---

[2]The Court notes that Petitioner's state court offense was possession with intent to deliver controlled substances on December 6, 1991, and his federal offense involved a conspiracy to distribute cocaine base spanning a period of time, including December 6, 1991.

Wright's 360-month sentence imposed by the United States District Court for the Eastern District of Pennsylvania began to run on December 9, 1997, the date Petitioner was received in custody, after having served his state sentence. See 18 U.S.C. §§3584(a); 3585(a). He was not awarded any credit for the time he spent in state custody because it was credited to his three-to-six-year state term. As such, the BOP was statutorily precluded under Section 3585(b) from granting Petitioner with presentence credit for time that had been credited against another sentence. Thus, Wright's sentence has been computed in accordance with the above cited federal statutes, Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), and the intent of his sentencing court.

### 3. *Nunc Pro Tunc* Designation

In Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991), the Third Circuit held that 18 U.S.C. § 3621(b) authorized the Bureau to retroactively designate the state institution for service of an inmate's federal sentence in cases in which the inmate was in primary non-federal custody at the time the federal sentence was imposed and where the federal sentencing court did not expressly direct concurrent service of the federal sentence. In Barden, the Third Circuit indicated that when determining whether to exercise its discretion to effect a retroactive designation

(commonly referred to as a *nunc pro tunc* designation), the BOP should use as guidance the factors set forth at 18 U.S.C. §3621(b). Id. at 482. Under Barden, the effect of a retroactive or *nunc pro tunc* designation is to commence the federal sentence upon imposition, as opposed to the date the nonfederal primary custodians relinquish primary custody to federal authorities, usually upon the date of state parole or satisfaction of the non-federal sentence. Id.

Here, Petitioner's request for credit was treated as a request for such a *nunc pro tunc* designation. The BOP properly contacted the sentencing court for its position, properly reviewed the nature and circumstances of the offense, as well as Petitioner's criminal history and characteristics, to determine whether a *nunc pro tunc* designation would be consistent with the intent of the sentencing court and the goals of the criminal justice system. Petitioner has not identified any material information that was overlooked or discounted, nor has he established any abuse of discretion in the BOP's consideration of his request. As such, Petitioner is not entitled to relief on this claim.

## B. Disciplinary Challenge

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d

141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the

disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Wright was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the

incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf.

Wright's only challenge to his disciplinary hearing is that the DHO violated his right to due process by imposing a monetary fine as one of the sanctions in finding him guilty of fighting. The Court finds, however, that after having afforded Wright all the procedural due process requirements set forth in Wolff, the monetary sanction imposed by the DHO was within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary Segregation (up to 6 months)
> D. Make monetary restitution.
> E. Monetary fine.
> F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation, etc.
> H. Remove from program and/or group activity.
> I. Loss of job.

J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III.     <u>**Certificate of Appealability**</u>

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, ——U.S. ——, ——, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

## IV.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will

be **DENIED**.  A separate Order will be issued.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 8, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2185-01.wpd